IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LORISA MARIE LINDSEY, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO.: 4:19-CV-3099 |
| | § | |
| ANDREW SAUL, | § | |
| COMMISSIONER OF THE | § | |
| SOCIAL SECURITY ADMINISTRATION, | § | |
| | § | |
| *Defendant*. | § | |

## MEMORANDUM AND ORDER

Plaintiff Lorisa Marie Lindsey filed this case under the Social Security Act, 42 U.S.C. §§ 405(g) for review of the Commissioner's final decision denying her request for disability insurance benefits and supplemental security income. Lindsey and the Commissioner moved for summary judgment. Dkts.14, 15. After considering the pleadings, the record, and the applicable law, the court DENIES Lindsey's motion, GRANTS the Commissioner's motion, and AFFIRMS the decision of the Commissioner.

## I.  Background

### 1.  Factual and Administrative History

In May 2015 Lindsey filed applications for disability insurance benefits and supplemental security income alleging she was disabled as of December 15, 2014 due to a heart attack and stent, breathing problems, high blood pressure, high cholesterol, and diabetes. Tr. 257. The agency denied her claims on initial review and reconsideration.

The administrative law judge (ALJ) held a hearing on April 3, 2018 at which Lindsey and a vocational expert testified.  The ALJ issued an unfavorable decision denying benefits on June 7, 2018.  Tr. at 16-28.  The Appeals Council denied review on January 30, 2019 and the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.984(b)(2) and 416.1484(b)(2).

## 2. Standard of Review

Federal court review of the Commissioner's final decision to deny Social Security benefits is limited to two inquiries: (1) whether the Commissioner applied the proper legal standard; and (2) whether the Commissioner's decision is supported by substantial evidence. *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018); *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014). When reviewing the Commissioner's decision, the court does not reweigh the evidence, try the questions *de novo*, or substitute its own judgment for that of the Commissioner.  *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002) (quoting *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000)).  Conflicts in the evidence are for the Commissioner to resolve, not the courts.  *Id*.

## 3. Disability Determination Standards

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A).

The ALJ must follow a five-step sequential analysis to determine whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920.

In the first step, the ALJ decides whether the claimant is currently working or "engaged in substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If so, the claimant is not disabled.  In the second step, the ALJ must determine whether the claimant has a severe impairment.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  If the claimant's impairment does not have a de minimis impact on her ability to work, she is not disabled.  *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018).  The third step of the sequential analysis requires the ALJ to determine whether the claimant's severe impairment meets or medically equals one of the listings in the regulation known as Appendix 1.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); 20 C.F.R. Part 404, Subpart P, Appendix 1.  If so, the claimant is disabled. If not, the ALJ must determine the claimant's "residual functional capacity" (RFC).  "The RFC is the individual's ability to do physical and mental tasks on a sustained basis despite limitations from her impairments." *Giles v. Astrue*, 433 F. App'x 241, 245 (5th Cir. 2011) (citing 20 C.F.R. §404.1545).  At step four, the ALJ determines whether the claimant's RFC permits her to perform her past relevant work.  If the answer is no, the ALJ determines at step five whether the claimant can perform any other work that exists in the national economy. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).  The claimant bears the burden to prove disability at steps one through four, but the burden shifts to the Commissioner at step five. *Newton*, 209 F.3d at 452-53.

### 4. The ALJ's Decision

The ALJ found that Lindsey met the insured status requirements for Social Security disability benefits through December 31, 2019 and although she worked after her alleged onset date her work did not rise to the level of substantial gainful activity. Tr. at 18. The ALJ found that Lindsey had the medically determinable severe impairments of "coronary artery disease, hypertension, diabetes, mild degenerative joint disease of bilateral hips, obesity, chronic obstructive pulmonary disease, mild intellectual disability (provisional), and a mood disorder," none of which met or medically equaled the severity of a listing. Tr. at 19. The ALJ further found that Lindsey retained the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b), with the following limitations:

> [S]he cannot climb ladders, ropes, or scaffolds. She can occasionally climb ramps and stairs, stoop, kneel, and crouch. She cannot crawl or have concentrated exposure to extreme heat, dust, fumes, odors, gases, or pulmonary irritants. She is able to understand, remember, and carry out simple instructions and tasks.

Tr. at 22. Based on this RFC and the testimony of the vocational expert, the ALJ concluded that Lindsey could not perform her past relevant work as a home health aide, but she could perform other jobs that exist in significant numbers in the national economy. Tr. at 26. Therefore, the ALJ concluded Lindsey has not been disabled within the meaning of the Social Security Act at any time since her alleged onset date, December 15, 2014, through the date of his decision, April 30, 2018. Tr. at 27-28.

## II.  Analysis

Lindsey raises one point of error on appeal: The ALJ erred in finding that Lindsey's impairments do not meet or equal Listing 12.05.  The Commissioner contends that the ALJ properly analyzed the requirements of Listing 12.05 for intellectual disorders and his conclusion is supported by substantial evidence.

### A.  Requirements of Listing 12.05

At step three of the sequential analysis the ALJ must determine whether a claimant's severe impairment meets or medically equals one of the listings in the regulation known as Appendix 1.   20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. Part 404, Subpart P, Appendix 1.  "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria.  An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original).  If a claimant meets this burden, she is disabled.  At issue here is Listing 12.05: Intellectual disorder.   Listing 12.05 is satisfied by meeting the requirements of either paragraph A or B:

> A. Satisfied by 1, 2, and 3 (see 12.00H):
> 1. Significantly subaverage general intellectual functioning evident in your cognitive inability to function at a level required to participate in standardized testing of intellectual functioning; and
> 2. Significant deficits in adaptive functioning currently manifested by your dependence upon others for personal needs (for example, toileting, eating, dressing, or bathing); and
> 3. The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.
> OR

B. Satisfied by 1, 2, and 3 (see 12.00H):
1. Significantly subaverage general intellectual functioning evidenced by a or b:
a. A full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; or
b. A full scale (or comparable) IQ score of 71–75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below on an individually administered standardized test of general intelligence; and
2. Significant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:
a. Understand, remember, or apply information (see 12.00E1); or
b. Interact with others (see 12.00E2); or
c. Concentrate, persist, or maintain pace (see 12.00E3); or
d. Adapt or manage oneself (see 12.00E4); and
3. The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.

20 C.F.R. Pt. 404, Subpt. P, App. 1.[1]  "Intellectual functioning refers to the general mental capacity to learn, reason, plan, solve problems, and perform other cognitive functions."  20 C.F.R. Pt. 404, Subpt. H.  "Adaptive functioning refers to how you learn and use conceptual, social, and practical skills in dealing with common life demands.  It is your typical functioning at home and in the community, alone or among others."  *Id.*  The ALJ must classify the claimant's limitations in the four areas of adaptive functioning set out in Listing 12.05B(2) according to the following five-point scale:

---

[1] After Lindsey applied for benefits but before the ALJ's April 30, 2018 decision section 12 of the Listing was significantly revised and went into effect on January 17, 2017. 81 Fed. Reg. 66, 138 (Sept. 26, 2016).  The Court uses the Listing in effect at the time the ALJ made his decision. *See Pruett v. Berryhill*, 2019 WL 2089183, at *4, adopted by 2019 WL 2084540 (N.D. Tex. May 13, 2019) (citing 81 Fed. Reg. 66138-01, 2016 WL 5341732 at n.1 ("We expect that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions.")).

| None | Mild | Moderate | Marked | Extreme |
|------|------|----------|--------|---------|
| Claimant has *total ability* to function in the area independently, appropriately, effectively, and on a sustained basis. | Claimant has *slightly limited* ability to function in the area independently, appropriately, effectively, and on a sustained basis. | Claimant has *fair ability* to function in the area independently, appropriately, effectively, and on a sustained basis. | Claimant has *seriously limited* ability to function in the area independently, appropriately, effectively, and on a sustained basis. | Claimant has *total inability* to function in the area independently, appropriately, effectively, and on a sustained basis. |

20 C.F.R. Pt. 404, Subpt. P, App. 1 at 12.00F(2).

**B. The ALJ's Conclusion that Lindsey's Impairment Does Not Meet or Equal Listing 12.05B is Supported by Substantial Evidence.**

Plaintiff contends she meets all the intellectual and adaptive functioning criteria found in paragraph B of Listing 12.05. *See* Dkt. 14 at 5-6. She argues that the ALJ erred (1) in disregarding her May 2017 IQ test as evidence of her IQ at age 22; and (2) in failing to find extreme limitation in one or marked limitation in two of the mental functioning categories he was tasked with classifying in accordance with the above chart.

In making his step 3 determination in this case, the ALJ properly considered the following: a letter from the Houston Independent School District (HISD) (Ex. 12E); Lindsey's reported activities of daily living (Ex. 5E); Lindsey's hearing testimony (Tr. 39-64); and the report of a May 2017 consultative psychological evaluation by Dr. Eva Stubits (Ex. 13F). *See* Tr. 19-22. *See Cornish v. Colvin*, No. CIV.A. 13-0002-BAJ, 2014 WL

1330308, at \*9 (M.D. La. Mar. 31, 2014) ("The ALJ correctly considered Plaintiff's daily activities, level of functioning and past employment to assess his intellectual and adaptive functioning.").

Based on this evidence, the ALJ concluded that Lindsey had a moderate limitation in understanding, remembering, or applying information; a mild limitation in interacting with others; a moderate limitation with regard to concentrating, persisting, or maintaining pace; and a mild limitation in adapting or managing oneself.  Tr. at 20. Because she did not have extreme limitation of one, or marked limitation of two, of the noted areas of mental functioning, the ALJ concluded paragraph B was not satisfied.  *Id.*  The ALJ further found paragraph B was not satisfied because "there is no evidence other than the information listed in Exhibit 12E to support the existence of adaptive functioning deficits prior to age 22."  *Id.* at 22.

"When an ALJ's step three determination is at issue, the reviewing court must (1) determine whether the ALJ supported the step three determination with a discussion of the relevant evidence . . .."  *Nichols v. Colvin*, No. 3:14-CV-3036-BN, 2015 WL 5146689, at \*4 (N.D. Tex. Sept. 2, 2015).  The ALJ's step three finding should not be disturbed if it is supported by substantial evidence.  *McCaskill v. Dep't of Health & Human Servs.,* No. 1:14CV24-HSO-RHW, 2015 WL 1457514, at \*7–9 (S.D. Miss. Mar. 30, 2015), *aff'd* 640 Fed. App'x 331 (5th Cir. 2016).  Ultimately, it is the Commissioner, rather than the Court, who is tasked with weighing and resolving conflicts in the evidence to determine the extent of a claimant's adaptive functioning limitations.  *Pruett v. Berryhill*, Civil Action No. 7:18-

cv-00110-O-BP, 2019 WL 2089183, at *5 (N.D. Tex. Apr. 11, 2019), *adopted by* 2019 WL 2084540 (N.D. Tex. May 13, 2019) (rejecting the claimant's argument that certain evidence in the record established she had marked, rather than mild, limitations in adaptive functioning because the Commissioner, rather than the court, is tasked with weighing evidence, resolving conflicts in the evidence, and determining the extent of the claimant's adaptive functioning limitations) (citation omitted).

1. **Lindsey failed to show deficiencies in her adaptive functioning existed prior to age 22.**

Lindsey argues her May 2017 full-scale IQ of 59 constitutes presumptive evidence of her IQ before age 22, and therefore the ALJ erred by finding she failed to present sufficient evidence that her intellectual disorder manifested before age 22.   Lindsey correctly argues that courts have recognized that a current IQ score can be considered evidence of IQ prior to age 22 because IQ generally remains stable over time.  *See Durden v. Astrue*, 586 F. Supp. 2d 828, 833 (S.D. Tex. 2008); *Adams v. Astrue*, No. 4-10-CV-216, 2011 WL 2550772 at *3 (N.D. Tex. June 27, 2011).  However, contrary to Lindsey's position, the ALJ here did not find that Lindsey "does not meet the requirements of Listing 12.05 due to a lack of showing that her IQ was of listing level severity prior to age 22." Dkt. 14 at 8.  Instead, the ALJ found Lindsey could not meet the criteria of Listing 12.05B because the record contains no evidence showing that her deficiencies in *adaptive functioning* manifested prior to age 22.

Lindsey's IQ score, standing alone, does not show that she meets the requirements of Listing 12.05.  *Alexander v. Colvin*, No. CV H-14-3482, 2015 WL 12532540, at \*10 (S.D. Tex. Dec. 22, 2015) (claimant's IQ scores were no evidence that prior to age 22 claimant had "significantly subaverage general intellectual functioning with deficits in adaptive functioning."); *Blanks v. Colvin*, Civil Action No. 3:14-CV-303, 2015 WL 2240740 at \*6 (May 11, 2015) ("The diagnostic description for intellectual disability [ ] requires that a claimant demonstrate both subaverage general intellectual functioning and deficits in adaptive functioning."). The only evidence in the record regarding Lindsey's alleged intellectual disorder prior to age 22 is a letter from HISD confirming that her name was on a roster of "students that received services for students with disabilities." [2] However, as the ALJ noted, the letter states only that Lindsey's name appears on a list of students who received disability services from the school district; it does not state the type of services Lindsey received and no other HISD records are available.  *See* Tr. at 22 ("there is no evidence other than the information listed in Exhibit 12E to support the existence of adaptive functioning deficits prior to age 22.").  Lindsey did not testify at the hearing regarding the history of her disorder prior to age 22, other than that she attended a charter school for special education.  Tr. at 50.  The record reflects that Lindsey dropped out of school at 7th grade but was never retained in a grade, and there is no evidence as to why she dropped out.  Tr. 477.  Dr. Stubits's report reflects Lindsey's "***current*** level of

---

[2] In her SSI application Lindsey represented "I was not disabled prior to age 22."  Tr. at 209.

adaptative and intellectual functioning," and does not give any opinion as to the history of Lindsey's adaptive functioning.  Tr. at 476 (emphasis added).  In fact, Lindsey told Dr. Stubits that her heart attack four years prior "significantly impacted her physical and cognitive functioning." *Id.*

This case differs from recent cases in which courts in this district remanded to the Commissioner on grounds that the ALJ erred in applying Listing 12.05.  In *Vital v. Berryhill*, Case No. 4:18-CV-2506, 2020 WL 1000252 at *6 (S.D. Tex. Mar.2, 2020), the Court concluded that the "uncontroverted evidence supports the presumption that [plaintiff's] condition manifested itself before she was 22 years old."  The uncontroverted evidence showed that the 61-year old plaintiff had never in her life lived alone and her Aunt testified plaintiff was not capable of living independently; she performed some chores and maintained personal hygiene "when she fe[lt] like it;" she was held back in 1st grade, placed in special education classes from 7th-10th grade, dropped out in the 10th grade at age 19 and failed the GED exam twice.  *Id.* at *1, 5.  Here, there is no evidence that Lindsey has been unable to live independently, either now or before age 22.  In *Blanks v. Colvin*, Civil Action NO. 3:14-CV-303, 2015 WL 2240740 at *8 (S.D. Tex. May 11, 2015), the ALJ ignored plaintiff's testimony that her symptoms had been consistent throughout her life and rejected as "ridiculous," a consulting psychologist's conclusions about plaintiff's functioning before age 22, all without sufficient explanation.  As noted above, Lindsey did not testify about her past level of functioning, and Dr. Stubits did not provide a conclusion about Lindsey's functioning before age 22.  The Court concludes that the ALJ did not err

in finding that Lindsey failed to meet her burden under 12.05B(3) to demonstrate that she

had deficiencies in her adaptive functioning before age 22.

### 2. Lindsey has not shown the ALJ erred in assessing her current limitations in adaptive functioning.

Lindsey argues the ALJ erred by failing to find that Lindsey has marked or extreme

limitation in the domain of concentration, persistence, and pace and marked limitation in

adapting and managing oneself.  Dkt. 14 at 8.  Because, as set forth above, substantial

evidence supports the ALJ's finding that Lindsey failed to show limitation in adaptive

functioning prior to age 22, Lindsey cannot meet the criteria of Listing 12.05.  Therefore,

even if the ALJ erred in finding Lindsey to have only moderate or mild limitations in the

four domains of mental functioning set forth in 12.05B(2), the error was harmless in light

of the fact that she failed to meet other Listing criteria.  *See Myhres v. Saul*, Civil Action

No. H-18-CV-2481, 2020 WL 1321816 * 6 (S.D. Tex. Mar. 19, 2020) ("even if the IQ

scores from Dr Stubits' evaluation were fully credited, none of the other requirements of

Listing 12.05 were met on this record.").  Nevertheless, the Court also finds that substantial

evidence supports the ALJ's determinations regarding Lindsey's functioning in the

domains of concentration, persistence, and pace and adapting and managing oneself.

First, contrary to Lindsey's argument, Dr. Stubits's report does not require a finding

of extreme limitation in the area of concentrating, persisting, or maintaining pace.  An

extreme limitation denotes a total inability to function in an area.  Dr. Stubits's report

indicates that Lindsey was "unable to meet competitive standards" in several areas related

12

to concentrating, persisting, or maintaining pace, but did not classify her as having "no useful ability to function" in any category.  Tr. at 483-84.  Further, the ALJ's determination that Lindsey has only moderate limitations in this domain is supported by Lindsey's ability to "perform tasks and tests involving concentration during the psychological consultation examination," such as reciting letters and a series of numbers backwards and forwards and computing simply addition and subtraction.  Tr. at 20, 478.  The ALJ's findings are further supported by Lindsey's own statements to Dr. Stubits that she has watches television, has no problem operating a motor vehicle, and prepares simple meals.  Tr. at 477.

In addition, substantial evidence supports the ALJs's finding that Lindsey has only mild limitations in her ability to adapt and manage herself.  The ALJ noted that "she remains able to tend to her personal hygiene and attire," "takes medications as instructed," and manages "situations or conflicts."  Tr. at 21.  Lindsey testified that she is unable to work because of breathing problems, and the only reason she stopped working as a home health aid is because she physically could not do it anymore.  Tr. 43, 49-50.  Lindsey testified that she lives with a roommate who works and her sister visits about three times a week, indicating that Lindsey spends time at home alone.  Tr. at 45, 48-49.  She testified she manages her own food stamp funds and noted on her function report that she can pay bills.  Tr. at 46, 277.  She testified that because of her physical limitations--breathing problems and pain--her sister takes her grocery shopping and cooks her meals.  Tr. at 45-47.  It is the duty of the ALJ, not the court, to weigh the evidence, resolve material conflicts in the evidence, and decide the case.  *Johnson v. Bowen*, 864 F.2d 340, 347 (5th Cir. 1988).

Lindsey has not demonstrated legal error and the ALJ's conclusion that Lindsey does not have extreme or marked limitation in the domain of concentration, persistence, and pace or marked limitation in adapting and managing oneself is supported by substantial evidence.[3]

## III.   Conclusion and Order

For the reasons discussed above, the court **GRANTS** the Commissioner's motion, **DENIES** Lindsey's motion, and **AFFIRM** the ALJ's decision denying benefits.

Signed on September 17, 2020, at Houston, Texas.

Christina A. Bryan
United States Magistrate Judge

---

[3] Lindsey argues that the ALJ should not have relied on the vocational expert's testimony that Lindsey's prior work as a home health aid was semi-skilled because he did not ask her enough questions about the mental aspects of the job.  This argument is unavailing first because it misrepresents the vocation expert's testimony.  *See* Dkt. 14 at 10. He testified that a home health aide "is semi-skilled work.  SVP is three."  He did not testify that a home health aide is semi-skilled work *because* it is SVP 3.  Tr. at 57.  In addition, the ALJ did not rely on the skill level of Lindsey's prior work in making any of his step 3 findings regarding the Listing 12.05B criteria. *See* Tr. 20-22.